**SIGNED THIS: October 06, 2011**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAMES R. GRUBE, ) | No.  09-81713 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| RICHARD E. BARBER, not individually ) | |
| but as Trustee for the above bankruptcy ) | |
| estate, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 09-8111 |
| ) | |
| SUZANNE H. GRUBE, ) | |
| ) | |
| Defendant. ) | |

**O P I N I O N**

Richard E. Barber (TRUSTEE), as Trustee for the Chapter 7 bankruptcy estate of James R. Grube (the DEBTOR), sued the DEBTOR'S wife, Suzanne H. Grube (SUZANNE), to avoid certain prepetition transfers and recover certain funds. The first amended

complaint contains five counts. The TRUSTEE is moving for summary judgment only as to Count I which states a claim for avoidance of fraudulent transfers under 11 U.S.C. § 548 (a)(1)(B).

Section 548(a)(1)(B) gives a trustee the power to avoid transfers that are constructively fraudulent, if the TRUSTEE is able to prove that:

(1)   an interest of the debtor in property was transferred;

(2)   the transfer was made two years or less before the bankruptcy filing;

(3)   the debtor received less than reasonably equivalent value in exchange for the transfer; and,

(4)   the debtor was insolvent on the date the transfer was made or became insolvent as a result of the transfer.

*Dunham v. Kisak*, 192 F.3d 1104, 1109 (7th Cir. 1999).

Count I of the first amended complaint alleges that in May, 2008, the DEBTOR received in excess of $800,000 as the final payment from the sale of his insurance agency, Hawk Insurance, that within two years of his bankruptcy filing he transferred a portion of these funds in excess of $225,000 to SUZANNE, that he did not receive reasonably equivalent value in return, and that at the time of the transfer he was insolvent or became insolvent as a result.

In his motion, the TRUSTEE identifies five separate transfers from the DEBTOR to SUZANNE by checks drawn on the DEBTOR'S personal checking account, as follows:

1.   Check number 1322 dated May 10, 2008, in the amount of $150,000.
2.   Check number 1321 dated May 10, 2008, in the amount of $70,000.
3.   Check number 1325 dated May 12, 2008, in the amount of $2,500.
4.   Check number 1353 dated December 22, 2008, in the amount of $15,000.
5.   Check number 1355 dated December 27, 2008, in the amount of $3,416.

SUZANNE does not dispute receiving and depositing these checks within two years prior to the DEBTOR'S June 2, 2009, bankruptcy petition. The reasonably equivalent value and solvency prongs are disputed. Reasonably equivalent value will be addressed first.

**MAY 10, 2008 TRANSFER OF $150,000**

There is no dispute about the facts surrounding the $150,000 check. SUZANNE and the DEBTOR submitted declarations that are consistent with each other and the TRUSTEE does not dispute their version of the events, summarized as follows.[1]

The DEBTOR and SUZANNE filed joint federal income tax returns for 2006 and 2007, which are being audited by the IRS. They state that the IRS is disputing the deductibility of certain unrelated losses against the DEBTOR'S income from the insurance agency. If their position fails, they anticipate owing taxes, interest and penalties in excess of $150,000. On May 10, 2008, the DEBTOR gave SUZANNE the $150,000 check, which she deposited into a brokerage account for which she is the sole owner. They both agreed that she would hold the funds as a reserve for the potential tax liability. SUZANNE declares that because the returns were filed jointly, she is jointly liable for any taxes due and she considers the funds to be "earmarked" for payment of that potential tax liability. In her memorandum of law in opposition to the motion for summary judgment, SUZANNE merely states in conclusory fashion that because she is jointly liable for any liability to the IRS arising out of the joint returns filed for 2006 and 2007, the earmarking issue is one for trial. No further argument is made and no supporting statutory or case citations are offered.

---

[1] SUZANNE'S statement of facts (Doc. 39) is signed by her, personally, but not by her attorney, notwithstanding Fed. R. Bankr.P. 9011(a). It contains a statement sufficient to allow it to be treated as an unsworn declaration made under penalty of perjury, 28 U.S.C. § 1746, and, apparently, that is its intended purpose. It is also titled as and intended to be her response to the facts alleged by the movant, as required by CDIL-LR 7.1(D)(2)(b).

The TRUSTEE contends that it is undisputed as a matter of fact that the DEBTOR received no consideration for the $150,000 transfer to SUZANNE, that the DEBTOR had complete control and discretion over how the funds would be used, and that no tax liability existed at the time of the transfer and none exists even today as the issue with the IRS is still under audit.  Based upon the declarations of SUZANNE and the DEBTOR and the transcript of the DEBTOR'S deposition, the Court finds that the TRUSTEE is correct that these facts are undisputed.  The TRUSTEE argues that SUZANNE'S earmarking defense is invalid as a matter of law.

Perhaps explaining why so few words are devoted to it in SUZANNE'S memorandum of law, the earmarking doctrine clearly has no application to the undisputed facts here.  Sometimes referred to as a nonstatutory defense to a preference avoidance action, the earmarking doctrine is a common law doctrine that has developed in the context of preference cases under section 547, not fraudulent transfer cases.  It relates to whether "an interest of the debtor in property" was transferred, which is the threshold element of proof under section 547(b).

The doctrine originally arose under the Bankruptcy Act of 1898 in codebtor cases where a new creditor who was obligated on an existing debt as a guarantor or surety provided the debtor with funds to pay the old creditor.  *E.g., First Nat. Bank v. Phalen*, 62 F.2d 21 (7th Cir. 1932).  The rationale was that because the funds came from the third party, not the debtor, the debtor's estate was not diminished.  *Id.* at 22.

The rationale applied even when the codebtor's payment was routed through and made by the debtor, so that the debtor had possession and some control of the funds, so

4

long as the funds were designated or "earmarked" for payment to the creditor. Courts have also noted that earmarking was equitable since if the transfer was avoided, the codebtor would be subject to double liability. *In re Moses,* 256 B.R. 641, 646 (10th Cir.BAP 2000). The earmarking doctrine was eventually expanded to situations where the new creditor was not a codebtor but simply a lender who loans funds to enable the debtor to pay the old creditor. *Id.* The extension of the doctrine has drawn much criticism, however. *Id.*

The earmarking doctrine is used by preference defendants as an argument that funds borrowed by a debtor and used to pay an antecedent debt, are not included within the meaning of "an interest of the debtor in property," where the loan of the funds is expressly conditioned on payment of a selected creditor, such that the debtor never really had control over the disposition of funds and where the transaction merely resulted in the substitution of one creditor for another with no diminution of the estate. *Matter of Smith,* 966 F.2d 1527, 1533 (7th Cir. 1992); *In re Computer World Solution, Inc.,* 427 B.R. 680, 688 (Bankr.N.D.Ill. 2010). It is a necessary element of the doctrine that the funds in question are borrowed funds. *Smith; In re Interior Wood Products Co.,* 986 F.2d 228, 232 (8th Cir. 1993). By borrowing money that is immediately paid out to a creditor, the transaction has a net neutral effect on the debtor's net worth; as far as the estate and creditors are concerned, the transaction is a wash.

The funds transferred by the DEBTOR to SUZANNE were not borrowed funds, there was no substitution of creditors, and the transfer did in fact diminish the DEBTOR'S estate. The earmarking doctrine, as it has been judicially developed, is not applicable to the undisputed facts presented here.

For fraudulent transfer avoidance purposes, the fraud may be either actual or constructive. If the debtor intended by the transfer to hinder his creditors, the fraud is actual (fraud in fact). It is constructive fraud (fraud in law) if the transfer is made for no or inadequate consideration. *McClellan v. Cantrell,* 217 F.3d 890, 894 (7th Cir. 2000). A constructively fraudulent transfer is avoidable without regard to the motivation of the debtor or the transferee, simply because of the adverse effect on the debtor's creditors, where the transfer depleted the debtor's estate of valuable assets without bringing in property of similar value from which creditors' claims might be satisfied. *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 988-89 (2nd Cir. 1981); *In re Rave Communications, Inc.,* 138 B.R. 390, 395 (Bankr.S.D.N.Y. 1992).

By transferring the $150,000 to SUZANNE and designating or earmarking it for conditional future payment to the IRS, the DEBTOR sought to shelter the funds from his other creditors. As such, the transfer was actually fraudulent as to his other creditors. *See In re Eckert,* 388 B.R. 813, 844-47 (Bankr.N.D.Ill. 2008) (transfer by debtor to third parties to hold title to keep it safe against debtor's creditors constitutes actual fraud). SUZANNE is in the precarious position of arguing that a transfer that amounts to actual fraud against all but one of the DEBTOR'S creditors, for the purpose of keeping funds safe and available for the IRS, is, therefore, not avoidable as one for constructive fraud because the IRS was designated or earmarked as the intended beneficiary. Constructive fraud and actual fraud are not mutually exclusive, however. A transfer made without consideration but also with intent to hinder, delay or defraud one's creditors is avoidable either or both as constructive and actual fraud. *In re Carlson,* 263 F.3d 748, 750 (7th Cir. 2001).

6

Obviously, a debtor in bankruptcy is not permitted to elect to exclude from property of his estate, funds that he owns free and clear, simply because he wants to hold them for the future benefit of a particular creditor, by designating them for payment to that creditor alone. *See* 11 U.S.C. § 541; *Matter of Merchants Grain, Inc. By and Through Mahern*, 93 F.3d 1347, 1352 (7th Cir. 1996) (an interest of the debtor in property includes property that would have been part of the estate if it had not been transferred prepetition). The DEBTOR simply does not have the right to do what the transfer sought to accomplish. Property of the estate, including transfers avoided and recovered by a bankruptcy trustee, is administered for the benefit of the entire body of creditors, in accordance with the priority scheme laid out in the Bankruptcy Code. A debtor has no right to reserve unencumbered assets for payment to a preferred creditor.[2] The DEBTOR was no more able to achieve this prohibited result by making a prepetition transfer to his wife than if he had held the funds himself in a segregated account.

SUZANNE makes no argument other than her earmarking theory that the funds in question are otherwise sheltered from the DEBTOR'S creditors. No argument is made that the funds are encumbered by a lien, are trust funds or retirement funds. She does not claim to have given value in exchange for the payment to her of the $150,000. As the TRUSTEE points out, there is no evidence and no claim that the transfer secured or satisfied a present or antecedent debt of the DEBTOR. SUZANNE'S reliance on her own potential liability to the IRS is unavailing. Even if her liability to the IRS was established, a payment made to benefit a third party, such as a payment to satisfy a third party's debt, does not furnish

---

[2] It makes no difference that the debt to the IRS may be nondischargeable or that the IRS may ultimately have an allowed priority claim for some or all of the taxes in dispute. All prepetition claims are paid, if at all, by the Chapter 7 Trustee in the course of his administration of the estate. Debtors may not bypass or preempt that administration by any means whatsoever.

7

reasonably equivalent value to the debtor. *In re Bargfrede,* 117 F.3d 1078, 1080 (8th Cir. 1997) (no reasonably equivalent value for husband's payment of wife's debt). Based on the undisputed evidence, the Court determines that the transfer was made for less than reasonably equivalent value.[3] The DEBTOR'S insolvency is addressed below.

**MAY 10, 2008 TRANSFER OF $70,000**

The TRUSTEE alleges and SUZANNE admits receipt of the DEBTOR'S check for $70,000, which she deposited into her personal checking account. Both the DEBTOR and SUZANNE declare that the funds were transferred by SUZANNE to Dragonfly Enterprises to pay taxes and operating expenses for a restaurant operated by their daughter called Jill's on Galena, that it was their intent that the funds would be used for that purpose, that the funds were actually used for that purpose, and that the transaction was intended to be a loan from the DEBTOR to Dragonfly Enterprises. The TRUSTEE challenges the characterization of the transfer as a loan to Dragonfly, attaching corporate records that indicate that no such loan was accounted for by Dragonfly. The correct interpretation of the transfer, as a loan or as a gift, is a disputed issue of material fact.

If, in fact, the $70,000 was loaned by the DEBTOR to Dragonfly Enterprises, meaning that SUZANNE was a conduit who merely funneled the money to that entity, the transfer from the DEBTOR to SUZANNE might not be avoidable as a fraudulent transfer, if Dragonfly's unsecured promise to repay the DEBTOR can be shown to have been reasonably equivalent in value to the amount of the loan.[4] This inquiry may turn not only

---

[3] The household expense corollary, addressed below, is clearly inapplicable to the $150,000 transfer since the funds were not expended, prepetition, in payment of indebtedness.

[4] SUZANNE does not raise the "mere conduit" defense to initial transferee liability, perhaps because the 7th Circuit has defined it quite narrowly. *See Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890 (7th Cir. 1988); *Nelmark v. Helms,* 2003 WL 1089363 (N.D.Ill. 2003). *Cf., In re Harwell,* 628 F.3d 1312 (11th Cir. 2010). By inference at least,

8

on Dragonfly's solvency, but also its access to the funds needed for the repayment, whether borrowed funds or operating revenues. *See Caterpillar Inc. v. Jerryco Footwear, Inc.,* 880 F.Supp 578, 592 (C.D.Ill. 1994) (transfers were not for reasonably equivalent value where borrower's oral promise to repay loan was not shown to have any market value or negotiability); *In re Advanced Telecommunication Network, Inc.,* 490 F.3d 1325, 1337 (11th Cir. 2007) (determination whether promise of repayment amounts to reasonably equivalent value must consider borrower's financial situation and ability or lack of ability to repay loan); *In re Nat. Century Financial Enterprises, Inc.,* 341 B.R. 198, 218 (Bankr.S.D.Ohio 2006) (promise to pay must offer "legitimate and reasonable" chance of return to provide reasonably equivalent value); *In re USA Commercial Mortg. Co.,* 2011 WL 2516270 (9th Cir. 2011).

The declarations of the DEBTOR and SUZANNE present evidence of facts that, if proved, could defeat the TRUSTEE'S avoidance claim as to the $70,000 transfer. Summary judgment must be denied as to this claim.

**MAY 12, 2008 TRANSFER OF $2,500**

In their declarations, SUZANNE and the DEBTOR state that in June, 2008, they visited their son and daughter-in-law who were living in London. They acknowledge the transfer of $2,500 from the DEBTOR to SUZANNE in advance of their trip and assert that the funds were intended to be used, and were actually used, for their travel expenses. They do not explain the reason for the transfer in that context, why it would be necessary or preferable for their travel expenses to be paid by SUZANNE rather than the DEBTOR.

---

the TRUSTEE'S theory that the funds were gifted (not loaned) to SUZANNE or to Dragonfly, is plausible, so the purpose for the transfer is in dispute.

The TRUSTEE offers no contradictory evidence. He simply relies on his position that because the transfer was for no value and did not secure or satisfy a present or antecedent debt owed SUZANNE, the DEBTOR did not receive reasonably equivalent value in exchange for the transfer.

The alleged use of the $2,500 brings into play the "household expense" corollary to the reasonably equivalent value requirement. An interspousal transfer of cash which is then used to pay reasonable and necessary household expenses is deemed to provide value to the transferor spouse even though the transferee spouse actually paid the expenses. *See U.S. v. Goforth,* 465 F.3d 730, 736 (6th Cir. 2006); *In re Schmidt,* 2007 WL 2456959 (Bankr.N.D.Tex. 2007). Questions of fact exist as to whether the travel expenses are "household expenses" and whether they were reasonable and necessary. It is also an issue whether the expenses should be allocated equally between the spouses for reasonably equivalent value purposes. *See Carneal v. Leighton,* 237 F.Supp.2d 104, 109-110 (D.Me. 2002). Summary judgment must be denied as to the $2,500 transfer.

**DECEMBER 22, 2008 TRANSFER OF $15,000**

The DEBTOR and SUZANNE both acknowledge the receipt and deposit of the $15,000 check dated December 22, 2008. They both assert the money was transferred to enable SUZANNE to pay her dentist bill and to remodel the kitchen in their home. The DEBTOR allocates $11,000 to the remodeling costs and $4,000 for the dental bill. SUZANNE admits that the house is titled solely in her name, but that the DEBTOR resides there and should contribute to the expenses.

SUZANNE cites to the Illinois "family expense statute," 750 ILCS 65/15. That statute, part of the Rights of Married Persons Act, makes both spouses jointly and severally

10

liable to creditors for expenses of the family and the education of children. Its potential applicability is unexplained and not apparent.

As with the $2,500 transfer, one apparent theory under which it could be determined that the DEBTOR received reasonably equivalent value for the $15,000 transfer is the household expense corollary. At this stage, it cannot be determined whether admissible evidence could be presented to show that the $15,000 transfer to SUZANNE was intended, at the time of transfer, to confer an economic benefit on the DEBTOR and did, in fact, result in the DEBTOR receiving an economic benefit.[5] But that possibility cannot be foreclosed based upon the existing record.

## DECEMBER 27, 2008 TRANSFER OF $3,416

SUZANNE and the DEBTOR acknowledge the transfer by the $3,416 check dated December 27, 2008. They both declare that the funds were for expenses related to a timeshare unit owned solely by SUZANNE located in Key West. The DEBTOR states that the funds paid the "ann. tx. maint." They maintain that they always went there together and that it is only fair that the DEBTOR shares expenses. Here, again, SUZANNE may have, at best, a 50% defense based upon the household expense corollary, if the elements of that defense are proved. The factual record is undeveloped at this stage.

## SOLVENCY

For purposes of the TRUSTEE'S motion for summary judgment, it is necessary to address the DEBTOR'S solvency as to, and only as to, the $150,000 transfer by check dated

---

[5] SUZANNE'S contention that the DEBTOR was obligated to support her does not appear to provide a defense. *See In re Bargfrede,* 117 F.3d 1078 (8th Cir. 1997); *In re Kelsey,* 270 B.R. 776, 781 (10th Cir.BAP 2001); *In re Leonard,* 2011 WL 1344732 (Bankr.E.D.Mich. 2011). At best, SUZANNE'S theory that the funds paid for reasonable and necessary expenses for which the DEBTOR was or would have been jointly liable, would provide a 50% defense, probably only as to the remodeling costs, since she was also jointly liable and had the financial ability to pay for her share. Her argument that the DEBTOR should not be allowed to "freeload" is equally applicable to her.

11

May 10, 2008. If the DEBTOR was insolvent when that transfer was made, or was rendered insolvent by it, then all of the elements of avoidability will have been satisfied and the TRUSTEE would be entitled to summary judgment as to that single transfer.

It is well-settled that the applicable standard for determining solvency is the balance sheet test. *Universal Church v. Geltzer,* 463 F.3d 218, 226 (2nd Cir. 2006). With respect to a person, the term "insolvent" is defined to mean a financial condition such that the sum of the person's debts is greater than all of such person's property, at a fair valuation, excluding property transferred with fraudulent intent and exempt property. 11 U.S.C. § 101(32).

In his motion, the TRUSTEE presents substantial evidence of the DEBTOR'S insolvency as of May 10, 2008. He attaches a series of personal financial statements published by the DEBTOR from 2001 through 2008. The January 25, 2008, statement lists assets valued at $1,543,000, including the $800,000 note receivable from sale of the Hawk Insurance Agency. That same statement schedules liabilities totaling $13,400,000, including a substantial amount arising out of the DEBTOR'S investment in a gaming business called InPlay. In his reply brief, the TRUSTEE states that the DEBTOR'S insolvency as of May 10, 2008, is admitted by SUZANNE in her response. The TRUSTEE is correct.

In her statement of facts in opposition to the TRUSTEE'S motion for summary judgment, at paragraph 70, SUZANNE responds to the TRUSTEE'S statement that on May 10, 2008, the DEBTOR was insolvent or became insolvent because of the transfers to SUZANNE, as follows:

> It's clear that by May 10, 2008, due to InPlay, Jim was insolvent. He didn't become insolvent by the transfers to me because the amount involved was

12

insignificant compared to the InPlay debacle.

This statement constitutes a judicial admission that is binding on SUZANNE. *See Soo Line R.R. v. St. Louis S.W. Ry.,* 125 F.3d 481, 483 (7th Cir. 1997); *Keller v. U.S.,* 58 F.3d 1194, 1199 n.8 (7th Cir. 1995); *Chow v. Aegis Mortg. Corp.,* 185 F.Supp.2d 914, 916 (N.D.Ill. 2002).

From her response, her position appears to be that there is no causal connection between the transfers in question and the DEBTOR'S insolvency because he was already insolvent prior to the transfers. That position, of course, is not helpful to SUZANNE since the TRUSTEE need only establish that either the DEBTOR became insolvent as a result of the transfers or that he was already insolvent when the transfers were made. With the DEBTOR'S insolvency as of May 10, 2008, admitted, all of the elements for avoidance of the $150,000 transfer are met. Summary judgment will be granted as to that transfer and denied as to the other transfers alleged in Count I.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###