**SIGNED THIS: August 9, 2012**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES R. GRUBE, | ) | Case No. 09-81713 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| A. CLAY COX, not individually, but as | ) | |
| Trustee for the above bankruptcy estate, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 09-8111 |
| | ) | |
| SUZANNE H. GRUBE, | ) | |
| | ) | |
| Defendant. | ) | |

O P I N I O N

This matter is before the Court on cross motions for summary judgment on Counts IV and V of the Amended Complaint filed by A. Clay Cox (TRUSTEE) as Trustee of the bankruptcy estate of the chapter 7 debtor, James R. Grube (DEBTOR). The claims asserted are for avoidance of a constructively fraudulent transfer in the nature of a payment made

by the DEBTOR to a bank, and recovery from the Defendant, Suzanne H. Grube (SUZANNE), as the alleged beneficiary of the transfer. Because the DEBTOR had personally guaranteed the bank debt, and his payment satisfied that liability, he received value in exchange for the payment. The transfer is not avoidable as constructively fraudulent and SUZANNE is entitled to summary judgment.

**Findings of Fact**

1. The DEBTOR commenced this chapter 7 case by filing a voluntary petition on June 2, 2009.

2. SUZANNE is the DEBTOR'S wife and is not now and never has been a debtor in a bankruptcy case.

3. Jill Grube is the daughter of the DEBTOR and SUZANNE; Jill is a trained chef.

4. Cutter Lake, LLC, an Illinois limited liability company, was formed on February 14, 2007, for the purpose of operating a restaurant at a strip-mall location leased at Lake of the Woods Plaza, Dunlap, Illinois.

5. Cutter Lake's sole member was Dragonfly Restaurant Group, LLC (DRG), an Illinois limited liability company.

6. SUZANNE had an ownership interest in DRG, but the parties dispute how much. The TRUSTEE asserts she owned 100%. SUZANNE asserts she owned only 25% and that Jill owned 75%. (Resolution of this dispute is not necessary to this decision).

7. Cutter Lake borrowed $350,000 from Busey Bank on August 27, 2007.

8. The DEBTOR personally guaranteed Cutter Lake's loan from Busey Bank; SUZANNE did not.

9. The assets of Cutter Lake were sold to an unrelated restauranteur on June 13, 2008, for $65,000.

10. By personal check dated May 9, 2008, the DEBTOR transferred $335,497.25 to Busey Bank, which paid the full balance of Cutter Lake's note and eliminated his liability on his personal guaranty.

11. There is no dispute that the payment by the DEBTOR to Busey Bank was a direct transfer from the DEBTOR'S personal checking account to Busy Bank. SUZANNE was not a joint owner on the checking account and she did not have custody or control of the funds at any time.

12. SUZANNE admits that the DEBTOR was insolvent when he made the transfer to Busey Bank.

13. As security for Cutter Lake's loan from Busey Bank, SUZANNE and the DEBTOR pledged a jointly owned investment account.

14. The investment account had a value of $207,394 when the DEBTOR paid Busey Bank; following the payment, Busey Bank released its lien on the account.

15. Cutter Lake's balance sheet states that DRG was owed $135,111.70 as of December 31, 2007.

16. Cutter Lake's General Journal reflects an increase in the amount of the loan payable to DRG of $335,497.25 as of May 9, 2008.

17. Cutter Lake's balance sheet states that DRG was owed $496,608.95 as of December 31, 2008.

**Theories of the Case**

Counts IV and V of the Amended Complaint seek to avoid the DEBTOR'S $335,497.25 payment to Busey Bank and recover the value of the transfer from SUZANNE. Count IV states a claim under 11 U.S.C. § 548(a)(1)(B) for constructive fraud. Count V is also based on constructive fraud under the alternative section 544(b)(1) and 740 ILL. COMP. STAT. 160/5(a)(2), section 5(a)(2) of the Uniform Fraudulent Transfer Act (UFTA). Recovery against SUZANNE is founded on 11 U.S.C. § 550(a)(1), which permits, to the extent that a transfer is avoided, the trustee to recover the property transferred or its value from "the entity for whose benefit such transfer was made."

SUZANNE contends that since the DEBTOR'S payment to Busey Bank satisfied his guaranty liability, he received value for the transfer, so that it is not avoidable as constructively fraudulent.  The TRUSTEE focuses on evidence tending to prove that the DEBTOR'S purpose or motive for making the transfer was to benefit SUZANNE and that SUZANNE did, in fact, receive substantial benefits on account of the payment.

The TRUSTEE contends that because of her ownership interest in DRG, the DEBTOR'S payment to Busey Bank of the Cutter Lake debt conferred a gift on SUZANNE. The TRUSTEE relies upon an email from the DEBTOR'S accountant referencing that the funds were "properly credited" as "coming from Sue." The TRUSTEE relies upon a second email copy on which the accountant allegedly wrote that when the Busy Bank loan was paid, DRG booked a note payable to SUZANNE, not the DEBTOR, which was later reclassified as a contribution to capital.  He further relies upon federal income tax returns filed by the DEBTOR, SUZANNE, DRG and Cutter Lake, LLC, as reflecting SUZANNE'S interest.

The TRUSTEE'S theory, opaque in earlier submissions, is laid out explicitly in his memorandum of law in support of his reply, filed as Document 68. While the TRUSTEE concedes that the transfer was a direct payment from the DEBTOR to Busey Bank, he argues that "it clearly was made for the benefit of Suzanne and is recoverable from Suzanne." (Doc. 68, p. 4). He argues that the DEBTOR'S true purpose in paying the Cutter Lake debt was to benefit SUZANNE.  The TRUSTEE contends that SUZANNE mischaracterizes the true nature of the transfer by spinning it as one where the DEBTOR "was merely satisfying an antecedent debt." (Doc. 68, p. 4).  He points out that SUZANNE

4

is not even claiming to have given reasonably equivalent value to the DEBTOR for the gift to her. The TRUSTEE emphasizes that "not only did Suzanne receive the gift of $335,497.00, but she also subsequently received the added benefits of a sizable income tax deduction on her federal income tax return and the release of a lien on an investment account." (Doc. 68, p. 4). The TRUSTEE relies heavily on *In re Phillips,* 379 B.R. 765 (Bankr.N.D.Ill. 2007). In the end, his reliance on *Phillips* is misplaced and his theory does not hold water.

**Analysis**

This matter is before the Court on cross motions for summary judgment. Each motion must be assessed independently; denial of one does not necessitate grant of the other. *Lexion Medical, LLC v. Northgate Technologies, Inc.,* 618 F.Supp.2d 896, 899 (N.D.Ill. 2009). The court must consider the evidence through separate lenses, always allowing the non-moving party the benefit of all conflicts in the evidence and choices among reasonable inferences from the evidence. *Rhino Linings USA, Inc. v. Harriman,* 658 F.Supp.2d 892, 896 (S.D.Ind. 2009). Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). The moving party must show there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). A disputed fact is material only if its resolution affects the outcome. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Disputes over facts that are irrelevant or unnecessary do not count. *Fritcher v. Health Care Serv. Corp.,* 301 F.3d 811, 815 (7th Cir. 2002).

5

Preliminarily, in her response to the TRUSTEE'S material statement of facts, SUZANNE objects to certain documents proffered by the TRUSTEE and asks that they be stricken for lack of foundation. Included are documents obtained by the TRUSTEE'S attorney by subpoena from Busey Bank, Robert W. Baird & Co., and the accounting firm FGMK, LLC. The proffer is supported solely by the affidavit of the TRUSTEE'S attorney representing that he obtained the documents in response to the subpoenas. The documents are the business records of the bank, the investment house and the accounting firm. SUZANNE contends that the TRUSTEE'S attorney is not disinterested and thus not competent to lay a foundation for admissibility.

Certainly the admissibility of business records as an exception to the rule against hearsay evidence requires a proper foundation to be laid by a custodian of records or other person knowledgeable about the business's practices. Fed.R.Evid. 803(6). Just because documents are obtained by subpoena does not mean that the requirement is waived or can be satisfied by testimony from the person who served the subpoena or received the documents. *See U.S. v. Oros,* 578 F.3d 703, 707-09 (7th Cir. 2009). So at trial an objection to the proffered documents for lack of foundation could be sustainable.

Trial courts have the discretion, however, to relax the strict admissibility rules for summary judgment purposes. *See Thanongsinh v. Board of Educ.,* 462 F.3d 762, 777 (7th Cir. 2006). For example, courts may consider documents on summary judgment even if a foundation has not been laid, so long as one could be laid at trial. *Holman v. Revere Elec. Supply Co.,* 2005 WL 638085 (N.D.Ill. 2005). On summary judgment, a court may consider

6

any evidence the content of which would be admissible at trial, even though not presently admissible in form. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir. 2002).

On summary judgment, the omission of an affidavit authenticating a document as a business record may be waived where the opposing party has relied upon the same document or otherwise admitted its authenticity. *Thanongsinh,* 462 F.3d at 778. This exception is especially applicable where the objecting party does not dispute the authenticity of the document or the accuracy of its contents. *See Minnesota Life Ins. Co. v. Kagan,* --- F.Supp.2d ----, 2012 WL 877580 (N.D.Ill. 2012).

Here, SUZANNE does not challenge the substance of any of the documents attached to the attorney's affidavit, which include copies of a pledge agreement, a release letter, account statements, emails and tax returns. She does not claim any of the documents are not authentic business records. In addition, in the same response where she attacks the attorney as an incompetent witness, SUZANNE responds to almost all of the documents as "undisputed."[1] Under the circumstances, the Court will consider the documents attached to the attorney affidavit for purposes of summary judgment, even though a proper foundation for admissibility at trial has not been laid. SUZANNE'S request to strike the affidavit and the documents will be denied.[2]

The TRUSTEE has pleaded two claims for avoidance of the DEBTOR'S payment to

---

[1] To be precise, SUZANNE does not affirmatively concede the admissibility or relevance of the documents, and doesn't always agree with the TRUSTEE'S interpretation of them, but she does not suggest that the documents are not what they purport to be or that a business record foundation could not be laid at trial.

[2] The attorney is not competent to lay a business records foundation and his affidavit accomplishes little other than to make the Court and SUZANNE aware that the documents were produced by third parties pursuant to subpoenas. This could have been accomplished by a simple, unsworn statement in the TRUSTEE'S motion or brief.

7

Busey Bank of $335,497 as a fraudulent transfer, based alternatively on bankruptcy law and on the UFTA. Both claims allege constructive fraud, not actual fraud. Since intent is not a material element of a constructive fraud claim, even if the DEBTOR'S purpose in making the payment was, as the TRUSTEE contends, to benefit SUZANNE, that fact does not carry the day for the TRUSTEE. Neither does the fact that SUZANNE actually benefitted from the transfer or was the person for whose benefit the transfer was made, as section 550(a) does not come into play unless and until the avoidability of the underlying transfer is established.

To sustain a claim that a prepetition payment is avoidable as constructively fraudulent under section 548(a)(1)(B), a trustee must prove, by a preponderance of the evidence, the following three elements:

> (1) a transfer of the debtor's property or interest therein;
> (2) made within two years before the date the bankruptcy petition was filed; and
> (3) for which the debtor received less than a reasonably equivalent value in return.

The trustee must also prove as a fourth element one of four alternatives, the most commonly invoked of which is that the debtor was insolvent on the date of the transfer or became insolvent as a result. 11 U.S.C. § 548(a)(1)(B). Correspondingly, in order to sustain a claim brought under section 544(b) and UFTA section 5(a)(2), a trustee must prove that the debtor made a transfer without receiving a reasonably equivalent value in exchange. 740 ILL. COMP. STAT. 160/5(a)(2).[3]

SUZANNE does not dispute that the funds transferred by the DEBTOR to Busey

---

[3] UFTA sections 5(a)(2) and (6)(a) are analogous to section 548(a)(1)(B). *In re Randy,* 189 B.R. 425, 443 (Bankr.N.D.Ill. 1995). Absence of reasonably equivalent value is a necessary element of each. Since the DEBTOR is determined to have received reasonably equivalent value, the result would have been the same had the TRUSTEE sued under section 6(a).

8

Bank were his property, that the payment was made within two years before his bankruptcy filing, and that he was insolvent at the time of the transfer. Reasonably equivalent value is the only disputed element. For purposes of section 548, "value" is defined to include satisfaction of an antecedent debt of the debtor. 11 U.S.C. § 548(d)(2)(A). Similarly, under the UFTA, value is given when an antecedent debt is satisfied. 740 ILL. COMP. STAT. 160/4(a). Once it has been determined that the debtor did, in fact, receive value in exchange for the transfer, the court must determine reasonable equivalence by comparing the value of what was transferred with the value of what was received. *Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 387 (7th Cir. 1997).

The TRUSTEE does not dispute that the DEBTOR personally guaranteed Cutter Lake's loan or that his payment to Busey Bank satisfied and discharged his personal liability on the guaranty. A guaranty is an antecedent debt. *In re Nirvana Restaurant Inc.,* 337 B.R. 495, 502 (Bankr.S.D.N.Y. 2006). The satisfaction of a debtor's own antecedent debt constitutes, by definition, "value" for fraudulent transfer purposes under the Bankruptcy Code and Illinois law. Value is typically measured in dollars. Here, the DEBTOR paid the sum of $335,497.25 and received in exchange a credit for that exact amount against his personal liability. Not only are the two sums reasonably equivalent, they are exactly equal.

A dollar for dollar credit against personal liability is determinative as to reasonably equivalent value. *In re R.M.L., Inc.,* 195 B.R. 602, 618 (Bankr.M.D.Pa. 1996); *In re Foos,* 188 B.R. 239, 245 (Bankr.N.D.Ill. 1995) (dollar for dollar reduction in personal guaranty liability means payments are for reasonably equivalent value "as a matter of law" and not avoidable under § 548(a)(2) or under Illinois law), *aff'd in part, rev'd in part on other grounds,* 1996 WL 563503 (N.D.Ill. 1996); *In re Walters,* 163 B.R. 575, 581 (Bankr.C.D.Cal. 1994); *In re*

9

*Coors of North Mississippi, Inc.,* 66 B.R. 845, 862 (Bankr.N.D.Miss. 1986).

The focus is properly on the economic benefit received by the debtor and the overall effect of the benefit on the debtor's net worth position. *In re Newtowne, Inc.,* 157 B.R. 374, 379 (Bankr.S.D.Ohio 1993). The transaction here had no effect, or a neutral effect, on the DEBTOR'S net worth. His assets and his liabilities both decreased by the same amount. His net worth was thus unaffected – it was the same after the transfer as before. It makes no difference that the DEBTOR was insolvent, even deeply insolvent, at the time of the transfer. *In re Wilkinson,* 196 Fed.Appx. 337, 343 (6th Cir. 2006) (rejecting the trustee's argument that satisfying a third-party antecedent debt can never amount to reasonably equivalent value for a deeply insolvent debtor).

The TRUSTEE makes much of the fact that the DEBTOR voluntarily chose to pay the Cutter Lake loan, with money that he owned separately from SUZANNE, without Busey Bank having made a demand for payment, either on the DEBTOR or Cutter Lake. In fact, there is no evidence as to whether the loan was current or in default at the time it was paid. The DEBTOR and SUZANNE could have used the investment account that was Busey Bank's collateral to pay down the loan, but they chose not to. Neither is there any evidence as to who got the $65,000 paid for Cutter Lake's assets, which were also Busey Bank's collateral. It is clear that Busey Bank did not receive those proceeds, since the loan was paid by the DEBTOR before the sale closed. The TRUSTEE'S gripe with the DEBTOR'S payment is that it further depleted his already insolvent balance sheet, and was a voluntary payment that was unnecessary given that Busey Bank had collateral and was not

10

demanding payment from the DEBTOR.

Assuming, as the Court must, the truth of the TRUSTEE'S contentions of fact, they are simply outside of the parameters of the constructive fraud inquiry, which focuses on reasonably equivalent value, not on a debtor's intentions, motivations or options. *See Scholes v. Lehmann,* 56 F.3d 750, 757 (7th Cir. 1995) (fraudulent intent is not an element of constructive fraud claim); *In re Securities Investor Protection Corp. v. R.D. Kushnir & Co.,* 274 B.R. 768, 780 (Bankr.N.D.Ill. 2002) (debtor's intent not relevant to constructive fraud). Thus, where a debtor's estate is depleted because he received no value in exchange for a transfer, the transfer is avoidable as constructively fraudulent no matter how pure his heart and mind were. Conversely, where reasonably equivalent value is received, the transfer is not constructively fraudulent, even if he actually intended to hinder or defraud his creditors.

The TRUSTEE attempts to shift the focus away from the DEBTOR and toward SUZANNE, pointing out a variety of benefits the payment conferred on her. The TRUSTEE'S efforts are futile, as similar arguments have been uniformly rejected by courts. As long as a transaction preserves the debtor's net worth, the transfer is not constructively fraudulent even if a third party was the intended beneficiary of the transfer and actually benefitted from the transfer. *In re United Energy Corp.,* 944 F.2d 589, 597 (9th Cir. 1991) (constructive fraud analysis is directed at what the debtor surrendered and what the debtor received "irrespective of what any third party may have gained or lost"); *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 991-92 (2nd Cir. 1981); *In re Richards & Conover Steel, Co.,* 267 B.R. 602, 614 n.4 (8th Cir.BAP 2001).

To the extent that the TRUSTEE relies upon evidence that by paying off Cutter Lake's debt to Busey Bank, the DEBTOR actually intended to confer a benefit on

11

SUZANNE (and perhaps Jill also), his reliance is misplaced.  Many of the documents submitted by the TRUSTEE evidence the accounting and tax treatment of the DEBTOR'S payment to Busey Bank, reflecting that it was treated as if the money had come from SUZANNE, not the DEBTOR, which is simply not true as a matter of undisputed fact.  The TRUSTEE argues that the documents evidence an intent by the DEBTOR to confer a gift (valuable benefits for no consideration) upon SUZANNE as a result of his payment.  It appears, however, that the DEBTOR and the accountant decided how they would characterize the transaction long after the payment had actually been made.  Only by a very thin inference could it be said that the DEBTOR intended, *at the time of the transfer*, to confer all of those benefits upon SUZANNE.  Regardless, even if he had it all planned out in advance, the transfer would not be avoidable since he received reasonably equivalent value.  In contrast to actual fraud, which looks to the debtor's state of mind, a claim for constructive fraud focuses on the transfer's effect on the debtor's financial condition and is allowed or denied without regard for the debtor's purposes or intentions.  *In re Jackson,* 459 F.3d 117, 122 (1st Cir. 2006); *In re McGuire,* 459 B.R. 348, 351 (Bankr.N.D.Ill. 2011).

To the extent the TRUSTEE is attempting to characterize the DEBTOR'S single payment as two transfers – one to Busey Bank for the funds paid and one to SUZANNE for the value of the benefits she received – this argument is also unavailing.  The Seventh Circuit Court of Appeals has rejected the theory that, for bankruptcy avoidance purposes, a single payment could be considered to be two transfers where it benefitted both a lender and a guarantor in *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Const. Co.)* 874 F.2d 1186, 1195-96 (7th Cir. 1989).  The court reasoned that since the Bankruptcy Code

12

defines "transfer" from the debtor's perspective, it would be a mistake to equate "transfer" with "benefit received." The court concluded that a single payment is one transfer no matter how many persons gain thereby.[4] *Id.* at 1196. Where there is no depletion of a debtor's estate because a payment is matched by an equivalent reduction in debt, any corresponding benefit to third parties does not come at the expense of the estate, and those parties cannot be said to have received a fraudulent transfer. *In re Tarin,* 454 B.R. 179 (Bankr.D.N.M. 2011); *In re Jamison,* 21 B.R. 380 (Bankr.D.Conn. 1982).

This single transfer principle is not diminished by section 550(a), identifying who is liable for recovery of a transfer or its value once the transfer is avoided, and assessing such liability to the initial transferee or the entity for whose benefit such transfer was made. 11 U.S.C. § 550(a)(1). That SUZANNE, having benefitted from the payment, may be potentially liable under section 550(a)(1) if the transfer could be avoided, does not help the TRUSTEE avoid the transfer in the first place. Issues of liability under section 550 are not relevant to issues of avoidance. *See In re Spinnaker Industries, Inc.,* 328 B.R. 755, 764 (Bankr.S.D.Ohio 2005) (avoidance and recovery must be evaluated separately). The Bankruptcy Code purposefully separates the identification of avoidable transfers from the identification of those who must pay. *Deprizio,* 874 F.2d at 1196; *In re Burns,* 322 F.3d 421, 427 (6th Cir. 2003). The TRUSTEE improperly collapses that separation.[5]

---

[4]The court's ruling in *Deprizio* was made in the context of a section 547 preference action, but the single transfer principle is a general one, equally applicable in a section 548 action.

[5]The TRUSTEE seems to argue that since SUZANNE received value without any consideration, and one who benefits from a transfer is a party who is liable for the return of its value, therefore the transfer itself must be fraudulent and avoidable. In the Court's view, the TRUSTEE is trying to back-door his way into an avoidability determination. While this kind of reverse logic may have validity in some circumstances, this is not one of them.

13

The TRUSTEE relies heavily upon *In re Phillips,* 379 B.R. 765 (Bankr.N.D.Ill. 2007). He asserts that the court in *Phillips* "ruled that Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee," and "ruled the trustee could recover from the debtor's spouse the entire loan payment made to ABN AMRO." (Doc. 68, p.4). In *Phillips,* the trustee sued the debtor's non-filing spouse to avoid and recover a payment of $823,000 that the debtor made to pay off a mortgage on their house, title to which was held in a land trust for which his wife was the sole beneficiary.

The *Phillips* court held that the payment to the mortgagee was avoidable as both actually fraudulent under 740 ILL. COMP. STAT. 160/5(a)(1) and constructively fraudulent under 740 ILL. COMP. STAT. 160/5(a)(2). The court's discussion of the constructive fraud determination is quite brief and, most importantly, dependent upon a finding that the debtor "made the transfer without receiving a reasonably equivalent value" and indeed he "received no value at all in exchange for the payment of the mortgage." *Id.* at 787. The case at bar is clearly distinguishable in that the DEBTOR received reasonably equivalent value in the form of a dollar-for-dollar satisfaction of his personal guaranty liability, a fact the TRUSTEE does not dispute.

The *Phillips* court's discussion of the actual fraud claim is more lengthy and contains a substantial discussion of the benefits received by the debtor's spouse in the form of increased equity in the house to which she, in effect, had sole title. That discussion, however, came in the context of the court's analysis of the debtor's intent to hinder, delay or defraud his creditors, and in the context of his wife's status as the entity for whose

14

benefit the transfer was made. The court addressed section 550(a)(1) only after determining that the transfer was actually fraudulent under 740 ILL. COMP. STAT. 160/5(a)(1). *Id.* at 786. Those issues of actual fraud and post-avoidance liability are not in play here where the TRUSTEE is not asserting an actual fraud claim and cannot establish the avoidability of the DEBTOR'S payment to Busey Bank as constructively fraudulent. *Phillips* offers no support for the TRUSTEE'S position that the DEBTOR'S payment to Busey Bank was constructively fraudulent.[6]

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[6] *Phillips* does rebut SUZANNE'S argument that the TRUSTEE cannot sue SUZANNE without also naming Cutter Lake and Busey Bank as necessary parties. SUZANNE is mistaken. Only where a transferee retains title to or an interest in the property conveyed is it a necessary party to a fraudulent conveyance action. Otherwise, a trustee may bring a single-defendant suit against a downstream transferee or a beneficiary of the initial transfer, but the trustee must always prove the avoidability of the transfer against such defendant unless collateral estoppel or *res judicata* applies. *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 744-46 (Bankr.S.D.N.Y. 2008).